DECISION AND JUDGMENT ENTRY
{¶ 1} Carol Hart Covert (appellant) appeals the trial court's judgment valuing and distributing the marital assets in a divorce action. She contends that the court erred by undervaluing her husband's optometry practice and failing to award her interest on a distributive award. We reject both of these contentions. The court's valuation of the optometry business is supported by the record and its decision to reduce the valuation amount proposed by appellant's expert due to increased market competition is not against the manifest weight of the evidence. The court was not required to apply a certain valuation approach or discount any other approaches in reaching its conclusion. Furthermore, the court did not abuse its discretion by declining to award interest on the distributive award because the court assigned the marital debt to the husband, the amount of the distributive award is fairly small compared to the amount of marital assets, and the three year period in which the husband could pay the distributive award is relatively short. The judgment of the trial court is affirmed.
 {¶ 2} Carol and Howard L. Covert (appellee) married in June 1968 and have one grown son. Appellee filed a divorce action in the Adams County Court of Common Pleas in September 2002. Following a trial, the court dissolved the parties' marriage and divided their liabilities and assets. The court awarded appellant the marital home and its contents, two cemetery plots, the parties' retirement accounts, an automobile, her checking and savings accounts, and the parties' life insurance policies. The court also found that she had received an early distribution of $5,200. The court awarded appellee the optometry practice and the building where the practice is located, the timeshare, his on-line trading account, and his personal checking account.
 {¶ 3} The court valued the assets awarded to the wife at $219,374.60 and the assets awarded to the husband at $453,168.69. The court distributed all of the marital liabilities — the mortgages on the marital and the business property — to the husband and determined that those liabilities totaled $169,080.46. After making these distributions, the court concluded that the wife's net assets totaled $219,374.60 and the husband's net assets totaled $284,088.23. To equalize the distribution, the court made a distributive award to the wife of $32,356.82, which it ordered the husband to pay in thirty-six (36) consecutive monthly installments. The court also awarded the wife spousal support of $2,500 per month until her 65th birthday and $1,000 per month thereafter.
 {¶ 4} Appellant filed a timely appeal from the court's judgment, assigning the following errors: "Assignment of Error One — The trial court erred when it failed to find the value of the optometry business was $175,000.00 [sic]. Assignment of Error Two — The trial court erred when it failed to order the husband to pay interest on the distributive award to the wife."
 I. {¶ 5} In her first assignment of error, appellant challenges the trial court's valuation of the optometry practice. She contends that the court erred in valuing the practice at $175,000 when her expert valued it at $275,000.
 {¶ 6} The valuation of property in a divorce case is a question of fact. Thus, the issue is subject to review under a manifest weight of the evidence standard. See Brown v. Brown, Pike App. No. 02CA689, 2003-Ohio-304, at ¶ 13; Cole v. Cole (Dec. 15, 2000), Jackson App. No. 00CA3; Rinehart v. Rinehart (May 18, 1998), Gallia App. No. 96CA10. Consequently, the trial court's judgment will not be reversed as long as it is supported by some competent, credible evidence. See Shemo v.Mayfield Hts., 88 Ohio St.3d 7, 10, 2000-Ohio-258, 722 N.E.2d 1018,1022; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159;C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, at the syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and to prevent a reversal. See Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992; Willman v. Cole, Adams App. No. 01CA725, 2002-Ohio-3596, at ¶ 24; Simms v. Heskett (Sept. 18, 2000), Athens App. No. 00CA20.
 {¶ 7} At trial, appellant introduced the testimony of Heinz Ickert, a certified public accountant who valued the optometry practice using three different approaches. First, Mr. Ickert valued the assets of the practice, or the cost of replacing those assets. Second, Mr. Ickert applied an excess earnings or capitalization of earnings method, examining the practice's income to determine its value. Lastly, Mr. Ickert valued the practice using the market method, examining the sale prices of other practices of similar size. Mr. Ickert then averaged the values reached using each of these methods and concluded that the fair market value, i.e. the price a hypothetical willing buyer would pay for the practice in an arms length transaction, of the optometry practice was $275,000.
 {¶ 8} Appellee did not introduce the testimony of an expert witness regarding the value of his practice, but testified that he believed the business was worth $150,000 to $160,000 without a covenant not to compete.
 {¶ 9} In its findings of fact and conclusions of law, the court concluded that there were several discrepancies in Mr. Ickert's valuation, including his failure to subtract the purchaser's expected earnings when calculating the value of the practice under the capitalization of earnings method and his decision to average the results of the three valuation methods in contravention of Revenue Rule 59-60. The court also found that Mr. Ickert failed to give sufficient weight to the effect competition from Wal-Mart was having on the optometry practice. The court noted that during the first six months of 2003, appellee's income totaled $44,284. Annualized for the entire year, appellee's 2003 income would be $88,568. In 2001 and 2002, appellee earned $149,203 and $140,979, respectively. The court found that the optometry practice's revenue had dropped by roughly 60% and, since the only change was the competition from Wal-Mart, it attributed this drop to the opening of Wal-Mart, which provided optometry services.
 {¶ 10} The court concluded that a more realistic value of the optometry practice could be reached by reducing Mr. Ickert's determined value by 60% to reflect the new competition from Wal-Mart. The court then found that the fair market value of the business was $175,000, including an amount for goodwill. The court noted that it had considered the net asset approach, the excess earnings method, appellee's opinion, and the book value approach in reaching its valuation decision.
 {¶ 11} Appellant makes several arguments in support of her contention that the court erred in valuing the optometry practice at $175,000. First, she argues that the court should not have considered the appellee's estimate of value because he is not an expert in valuation and did not state the basis for his opinion. She acknowledges that a property owner can usually opine as to the value of his property without being qualified as an expert, see Tokles Sons, Inc. v. Midwestern Indem.Co. (1992), 65 Ohio St.3d 621, paragraph one of the syllabus,605 N.E.2d 936, but contends that the court must "evaluate and criticize" the owner's testimony to determine what weight, if any, to give the testimony. She argues that where a property owner bases his opinion on "unsubstantiated assertions," the court may reject the owner's opinion. In the abstract, these assertions are correct.
 {¶ 12} However, at trial, no one objected to appellee's testimony regarding the value of the practice. In the absence of an objection to the admission of evidence at trial, all but plain error is waived. Statev. Jones, 91 Ohio St.3d 335, 2001-Ohio-57, 744 N.E.2d 1163. Appellant argues that her objection is to the court's reliance on appellee's opinion, not to the admission of his testimony, so she has not waived this error. This is a distinction that lacks a meaningful difference. It is a cardinal rule of appellate procedure that "an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210, 436 N.E.2d 1001. Appellant could have notified the court that she believed its consideration of appellee's estimate of value was improper by objecting to this testimony. Once the appellee's opinion came in, the court was free to consider it. Therefore, we conclude that appellant waived all but plain error by failing to object to the admission of appellee's opinion. In the civil context, the plain error doctrine applies only when an error by the trial court "seriously affects the basic fairness, integrity, or public reputation of the judicial process." Goldfuss v. Davidson, 79 Ohio St.3d 116, 122-123,1997-Ohio-401, 679 N.E.2d 1099.
 {¶ 13} Initially, we doubt there was any error in admitting the appellee's opinion. He testified that he had purchased the practice from its former owner in an arm's length transaction. He had practiced in the area for a number of years. This would seem to be a sufficient foundation for his opinion. Moreover, even assuming that the court erred in considering Howard's testimony as to the value of the business, we cannot conclude that the court's consideration of this evidence was so egregious as to rise to the level of plain error.
 {¶ 14} Next, appellant argues that the court improperly considered the book value method when determining the value of appellee's practice. This seems an odd argument in light of the fact that appellant's expert introduced the only evidence of book value. However, appellant contends that Mr. Ickert used the book value of the business only as a preliminary factor in determining the final value of the practice through other valuation methods and there is no evidence in the record that the book value method should be given any weight. She further argues that reliance on the book value method is improper because it does not include a value for the goodwill of the business, which is a marital asset.
 {¶ 15} Mr. Ickert concluded that the book value of the business was $140,000. Appellee contends that this valuation is erroneous because Mr. Ickert improperly included the value of the land on which the practice is located when reaching this conclusion. On cross-examination, Mr. Ickert admitted that the value of the land should not have been included in the business valuation because it was appraised separately. According to appellee, the book value of his practice is only $107,957 after the improperly included land value is subtracted.
 {¶ 16} Despite appellant's argument to the contrary, there is no evidence that the trial court improperly relied upon the book value. A trial court has broad discretion to develop a measure of value when dividing marital property. See Kell v. Kell (Dec. 14, 1993), Ross App. No. 92CA1931. Just as her expert witness did, the court was free to use the book value as a "starting point" for determining the value of the business. There is no basis to conclude that the court's consideration of the business' book value was inappropriate.
 {¶ 17} Appellant also contends that the court improperly decreased Mr. Ickert's valuation of the business. She concedes that the court properly relied upon Mr. Ickert's opinion as a starting point for its analysis, but contends that the court should not have downwardly adjusted the valuation because there was no basis for its reductions.
 {¶ 18} It is the trial court's job, as trier of fact, to resolve disputes of fact and weigh the credibility of the testimony and evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178. We give deference to the trial court because "the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 19} The court was not required to simply accept Mr. Ickert's conclusions and adopt them. The court properly recognized that Mr. Ickert's valuation was "hypothetical" and that the true value of the practice could only be ascertained through an actual sale of the business. The court also noted that Mr. Ickert made some admitted errors in his analysis and that he failed to comply with one of the principles described in Revenue Ruling 59-60, a document issued by the Internal Revenue Service outlining the appropriate method for valuing a business for tax purposes, despite stating that he had relied on that ruling in valuing the optometry practice.
 {¶ 20} Additionally, and most significantly, the court concluded that Mr. Ickert failed to recognize the effect Wal-Mart was having on the optometry practice. Mr. Ickert testified that the Wal-Mart in Adams County had been open for two to three years and had no apparent impact on the practice's revenues. Mr. Ickert stated that this lack of impact was not surprising since most of appellee's patient base did not pay for his services out-of pocket, but received his services through Medicaid or Medicare. Mr. Ickert testified that the practice's revenues during 2001 and 2002 were fairly stable, but he had not considered the practice's year to date financial information for 2003.
 {¶ 21} Appellee testified that the opening of Wal-Mart had affected his practice, but that he could not quantify the effect. He also testified that the Wal-Mart Vision Center had opened only a year to a year and a half earlier.
 {¶ 22} After examining the practice's financial records and the parties' income tax returns, the court determined that the practice's revenues had dropped substantially since the opening of Wal-Mart. Appellant argues that the record does not support the court's attribution of the decline in revenues to Wal-Mart, that there is no evidence that the revenue decline is permanent, that the court improperly doubled the practice's revenues for the first half of 2003 to determine the practice's total earnings for the year, and that the court erroneously concluded that the business' income had decreased by approximately 60%.
 {¶ 23} We agree that the court improperly included its own observations about the effect of Wal-Mart on the local business community; however, there is sufficient evidence in the record to support the court's finding that the practice's revenues declined due to the competition from Wal-Mart. Appellee testified that his patient volume had decreased since the Wal-Mart opening and the financial documents reflect a decline in revenues, which began sometime after the opening of Wal-Mart's optical center.
 {¶ 24} The record also supports the court's finding that Mr. Ickert failed to appropriately adjust his valuation to reflect the practice's diminishment in value due to the competition from Wal-Mart. Mr. Ickert erroneously believed that the Wal-Mart vision center had been open during 2001 and 2002. He failed to make any adjustment to his valuation for the decline in revenues in 2003 despite acknowledging that the most recent year's financial information was most pertinent when valuing an optometry practice because reimbursement rates and other factors affecting profitability change frequently. And, since there is no evidence that Wal-Mart would close its optometry practice, the court did not err in assuming that the practice's revenues would not improve in the future.
 {¶ 25} We also find no error in the court's decision to annualize the practice's revenues for the first six months of 2003 by doubling them in order to estimate the total returns for the year. Mr. Ickert acknowledged that the optometry business is not seasonal and that it is subject to frequent revenue changes. Therefore, the trial court's decision to consider the most recent revenue figures in determining the value of the practice and to annualize those figures for purposes of comparison is not erroneous.
 {¶ 26} We do find that the trial court erred in concluding that the practice's revenues had declined by approximately 60% between 2001-2002 and 2003, when they had declined by only 40%. However, it appears that the court actually reduced Mr. Ickert's valuation by only 40%, not 60% as it stated. A reduction of Mr. Ickert's $275,000 valuation by 60% results in a valuation of $110,000, while a reduction of Mr. Ickert's valuation by 40% results in a valuation of $165,000, only slightly lower than the value the court attributed to the optometry practice. Therefore, it appears that the court simply misspoke when it stated that the practice's revenues had declined by 60% and any error in this misstatement is harmless.
 {¶ 27} Appellant also argues that the most plausible explanation for the drop in the revenues of the optometry practice is appellee's desire to minimize the value of his practice in anticipation of the divorce, not the opening of the Wal-Mart Vision Center. Notably, appellant did not raise this argument in the trial court. A party cannot assert new legal theories for the first time on appeal. Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. Thus, we will not consider issues which an appellant failed to raise initially in the trial court.Lippy v. Society Natl. Bank (1993), 88 Ohio App.3d 33, 623 N.E.2d 108. Moreover, there is no evidence in the record that appellee attempted to minimize profits by turning away patients, working less, or taking any other actions. Therefore, we reject this argument.
 {¶ 28} Last, appellant contends that the evidence submitted to the trial court was not sufficient to support the trial court's finding that the value of the optometry business was $175,000.
 {¶ 29} When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. Clymer v. Clymer (Sept. 21, 2000), Franklin App. No. 99AP-924;Kell, supra. However, the court may not simply adopt an intermediate figure without a supporting rationale when the parties present substantially different valuations of an asset. Patterson v. Patterson
(Dec. 14, 1998), Adams App. No. 97CA654.
 {¶ 30} Here, the trial court concluded that the value of the optometry practice was somewhat higher than the value attributed to it by appellee but lower than that reached by appellant's expert. In reaching this conclusion, the court did not arbitrarily adopt a figure between the parties' valuations. In fact, there is no evidence that the court relied on appellee's valuation opinion in reaching its determination. Rather, the court indicated that it accepted Mr. Ickert's valuation as a starting point but believed he had made certain errors. The court then adjusted the valuation to account for those errors. Therefore, we conclude that the court's valuation of the optometry business at $175,000 is supported by the evidence.
 {¶ 31} Having rejected all of appellant's arguments, we conclude that the court's valuation is not against the manifest weight of the evidence. The first assignment of error is meritless.
 II. {¶ 32} In her second assignment of error, appellant argues that the court erred when it failed to order appellee to pay interest on the distributive award.
 {¶ 33} The decision to award interest on obligations arising from a division of marital property lies within the sound discretion of the trial court. Koegel v. Koegel (1982), 69 Ohio St.2d 355, 432 N.E.2d 206, syllabus. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin,67 Ohio St.3d 487, 1993-Ohio-52, 620 N.E.2d 72; Rock v. Cabral (1993),67 Ohio St.3d 108, 616 N.E.2d 218. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135,566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301.
 {¶ 34} Appellant argues that the court's failure to award interest results in an inequitable distribution of the marital property because appellee receives his share of the marital assets immediately, but she does not receive her entire share of the marital property for three years. She contends that the court should have awarded interest on the payments it ordered appellee to make.
 {¶ 35} In its entry, the court noted that it was allowing appellee to pay the distributive award over a period of three years to give him time to refinance the office building and to pay off the mortgage on the marital home. It appears that the court declined to award interest on the distributive award because appellee was burdened with the marital debt while Carol was "debt free." Moreover, compared to the total marital assets each party received, the amount of the distributive award was fairly small and the court granted appellee a fairly short period in which to pay the distributive award. Cf. Seciliot v. Seciliot, Union App. No. 14-2000-27, 2001-Ohio-2151 (trial court abused its discretion by failing to award interest on $235,605.91 distributive award payable over nearly ten years); Singer v. Singer (Apr. 23, 1987), Cuyahoga App. No. 42049 (interest appropriate on $300,000 distributive award payable over almost seventeen years). The court did not abuse its discretion by failing to award appellant interest on the distributive award. The second assignment of error is also meritless.
 {¶ 36} Having overruled both assigned errors, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.