[Cite as *Smith v. Smith*, 2019-Ohio-899.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| REBBECCA R. SMITH, | : | |
| | : | Case No. 18CA11 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| CLIFFORD F. SMITH JR., | : | |
| | : | |
| Defendant-Appellee. | : | **Released: 03/07/19** |

_____
APPEARANCES:

Rebbecca R. Smith, Logan, Ohio, Pro Se Appellant.

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Rebbecca R. Smith and Clifford R. Smith, Jr., were granted a divorce on June 11, 2018. Rebbecca R. Smith appeals the Decision and Judgment Entry of the Hocking County Common Pleas Court, entered May 21, 2018, which overruled her objections to the Magistrate's Decision of January 4, 2018. Upon review, we find the trial court did not abuse its discretion with regard to its rulings on the objections. Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} The parties, Appellant Rebbecca R. Smith and Appellee Clifford

F. Smith, Jr., were married on December 30, 2016.  Appellant filed a complaint for divorce in the Hocking County Common Pleas Court on May 1, 2017.  Contemporaneously, Appellant filed an ex parte motion for a temporary restraining order and an ex parte motion for temporary orders granting exclusive occupancy of the marital residence.  On May 4, 2017, the Magistrate granted Appellant's motions.  On May 17, 2017, Appellee filed an answer and counter-claim in which he agreed that the parties were incompatible and also requested the divorce complaint to be granted.

{¶3} Appellant subsequently filed a request for mediation which was denied.  On June 16, 2017, the trial court filed an order granting Appellant's notice of voluntary dismissal of the action.  However, on July 10, 2017, Appellant filed a notice of withdraw of voluntary dismissal.  She also filed a request for sale of the marital residence.  On July 12, 2017, Appellant filed a motion for contempt.  Attached to the motion for contempt was Appellant's affidavit, in which she made several allegations that Appellee had violated the temporary restraining order.  Pertinent to this appeal, Appellant alleged that Appellee had removed her teenage son from the automobile insurance.

{¶4} The divorce action came on for hearing before the Magistrate on November 15, 2017.  The parties filed post-trial briefs on the contested

issues. On January 4, 2018, the Magistrate's Decision/Judgment Entry was filed.

{¶5} The Magistrate found that the parties stipulated certain preliminary and foundational issues. The Magistrate took judicial notice of a civil protection order case, 17-DR/DV-0061, originally filed May 1, 2017. The Magistrate found the remaining issues were: (1) equity in the marital residence and (2) division of marital joint savings and checking accounts. The Magistrate made findings of fact and conclusions of law and ordered Appellee's counsel to prepare a Decree of Divorce within 14 days of the time period for objections to the decision.

{¶6} Appellant filed Objections to the Decision of the Magistrate on January 11, 2018. In the objections' pleading, Appellant's counsel set forth 6 objections. Included within this pleading was Appellant's own listing of objections and related arguments, along with proposed documentation. On January 17, 2018, Appellee filed a Motion to Strike Attachments to Plaintiff's Objections to Decision of Magistrate, arguing that nearly all of the attachments had not been made exhibits at trial.

{¶7} On March 20, 2018, Appellee filed a reply to the objections. On May 21, 2018, the trial court filed a Judgment Entry. The trial court overruled all objections and affirmed all other orders of the Magistrate. The

trial court filed a Judgment Entry-Decree of Divorce on June 11, 2018.  This timely appeal followed.

JURISDICTION OF THIS COURT

{¶8} We are initially presented with the question of whether we have a final appealable order.  The judgment entry attached to the June 20, 2018 notice of appeal is the trial court's Journal Entry filed May 21, 2018.[1]  Two issues are presented: (1) Appellant did not attach a copy of the Judgment Entry-Final Decree of Divorce filed June 11, 2018; and (2) the record does not reflect that Appellee's counter-claim was dismissed either orally or writing.

{¶9} Section 3(B)(2), Article IV of the Ohio Constitution provides that courts of appeals have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *."  Generally speaking, "[a]n order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met. *Liming v. Liming,* at ¶ 3, quoting *State ex rel. Scruggs v. Sadler,* 97 Ohio St.3d 78, 776 N.E.2d 101, 2002-Ohio-5315, at ¶ 5.  If an order is not both final and appealable, a reviewing court has no jurisdiction to consider the

---

[1] Appellant also attaches to the notice of appeal a document captioned "Plaintiff's Objections to Judges Decision/Judgment Entry filed May 21, 2018."

matter and has no choice but to dismiss the appeal. *The Bell Drilling & Producing Co. v. Kilbarger Constr., Inc*., 4th Dist. Hocking No. 96CA23, 1997 WL 361025 (June 26, 1997), at *2.

{¶10} To determine whether an order is final and appealable, an appellate court's review involves a two-step process. *Liming, supra,* at ¶ 6, citing *Wisintainer v. Elcen Power Strut Co.,* 67 Ohio St.3d 352, 354, 1993-Ohio-120, 617 N.E.2d 1136.  First, and most important, a reviewing court must focus its attention on whether the appealed order is "final" as established by R.C. 2505.02; that is, whether the order affects a substantial right and in effect determines the action and prevents a judgment. *Wisintainer* at 354, 617 N.E.2d 1136.  A divorce proceeding is a "special proceeding." *Robinson v. Robinson,* ¶ 6. *See Wilhelm–Kissinger v. Kissinger,* 129 Ohio St.3d 90, 91, 2011-Ohio-2317, 950 N.E.2d 516; *State ex rel. Papp v. James,* 69 Ohio St.3d 373, 379, 632 N.E.2d 889 (1994); *Davis v. Davis,* 4th Dist. Jackson No. 00CA28, 2001 WL 884090, *3.  However, an order made in a special proceeding is final only if it affects a substantial right. *Robinson, supra,* at ¶ 7. R.C. 2505.02(B)(2).  "An order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." *Bell v. Mt. Sinai Med. Ctr.,* 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

{¶11} App.R. 4(A) provides that a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry. App.R. 3(D) requires that a notice of appeal "designate the judgment, order or part thereof appealed from." Here, Appellant attached the May 21, 2018 entry to the notice of appeal but did not attach the Judgment Entry-Final Decree of Divorce dated June 11, 2018. A final decree of divorce determines the entire case and reserves nothing for future determination. R.C. 2505.02. *Evans v. Cole*, 4th Dist. Jackson No. 00CA17, 2011 WL 688594 (June 11, 2001), at *4. And, temporary orders merge into the final divorce decree. *Evans, supra,* citing *Colom v. Colom*, 58 Ohio St.2d 245, 389 N.E.2d 856 (1979).

{¶12} In *Jenkins v. Hill*, 4th Dist. Meigs No. 4CA4, 2015-Ohio-118, Appellant Jenkins designated the trial court's February 27, 2014 judgment denying his motion for new trial in his notice of appeal, but his assignment of error and related argument contested the trial court's February 10, 2014 judgment entered on the jury verdict in favor of the opposing parties. Jenkins did not request a new trial but instead requested a reversal of the judgment entered by the trial court on the jury verdict. We were guided by the decision in *Transamerica Inc. Co. v. Nolan*, 72 Ohio St.3d 320, 649 N.E.2d 1229 (1995), syllabus, wherein the Supreme Court of Ohio expressly

recognized that "[p]ursuant to App.R. 3(A), the only jurisdictional requirement for a valid appeal is the timely filing of a notice of appeal." *See Jenkins, supra,* at ¶ 9. Therefore, in *Jenkins* we held, consistent with *Transamerica,* that a failure to comply with App.R. 3(D) is not a jurisdictional defect. *Id. See, e.g., Bank of Am., N.A. v. Robledo,* 10th Dist. Franklin No. 13AP–278, 2014–Ohio–1185, ¶ 14, a case in which the appellants failed to comply with App.R. 3(D) ("This court has rejected the contention that a defect in a notice of appeal that has been timely filed from a final judgment defeats jurisdiction.")

{¶13} The *Transamerica* decision further provided at ¶ 10: "When presented with other [i.e. nonjurisdictional] defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted, and its decision will not be overturned absent an abuse of discretion." *Id.* at syllabus. In *Jenkins,* we noted that there was in fact a final appealable order, and the appellees had not established any prejudice from the App.R. 3(D) defect. In the briefing, the appellees had addressed the merits of Jenkins' claims. Under these circumstances, we exercised our discretion to address the merits of this

appeal. *See also Avery v. Avery*, 2nd Dist. Greene No. 2001-CA-100, 2002-Ohio-1188, at *1.[2]

{¶14} In this case, Appellant's notice of appeal specifies that she is appealing the Judgment Entry filed May 21, 2018.  Appellant is acting pro se.  Pro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. *Hinton v. Shoop*, 4th Dist. Ross No. 17CA3619, 2018-Ohio-3647, at Fn. 2; *see Meyers v. First Natl. Bank,* 3 Ohio App.3d 209, 210, 444 N.E.2d 412 (1981).  However, to decide cases on their merits and further the interest of justice, we must give pro se litigants wide latitude. *Miller v. Kutschbach,* 111 Ohio App.3d 157, 159, 675 N.E.2d 1277 (4th Dist.1996).

{¶15} The May 21, 2018 journal entry was merged into the Judgment Entry-Final Decree of Divorce.  Appellant could not have appealed the May entry until the final decree of divorce was entered on the record.  Once the final decree was entered, Appellant timely filed her notice of appeal.  As in *Jenkins, supra,* given that Appellee received adequate notice of the issues raised and has responded to them, we find no harm.  Therefore, we do not find this non-jurisdictional defect prevents our consideration of the appeal.

---

[2] Appellate court considered the merits of a cross-appeal where, after examining the record and the timely-filed notice of cross-appeal, and while observing that the notice might have been better worded, the defect did not merit sanction, including dismissal. Appellee was not harmed in any way, and both Appellee and the appellate court could adequately tell from the notice that cross-appellant intended to appeal from the final judgment of the trial court.

{¶16} The second issue with regard to our ability to consider the appeal is the fact that the record reveals Appellee's counterclaim was not dismissed either orally or in writing. However, generally, when an order does not contemplate further action and no other related issues remain pending, the order normally constitutes a final order. *Cummin v. Cummin; Elliott v. Rhodes* at ¶ 17; citing *In re H.T.–W.,* 6th Dist. Lucas No. L-10-1027, 2010-Ohio-1714, 2010 WL 1531682, ¶ 7; *see also Christian v. Johnson,* 9th Dist. Summit No. 24327, 2009-Ohio-3863. Civ.R. 75(F) forbids a trial court from entering a final judgment unless the judgment also divides the parties' property and allocates parental responsibilities. If the requirements of the two-step process have been met and the order disposes of all claims and/or parties involved in the action, it is final and appealable and subject to appellate review.

{¶17} In this case, the Judgment Entry-Decree of Divorce entered June 11, 2018 addressed all issues raised by the parties and none are outstanding. Although the trial court's judgment entry did not expressly dismiss Appellee's counterclaim, the effect of the judgment makes clear that all issues were resolved. *See Park v. Park*, 10th Dist. Franklin No. 08AP-612, 2008-Ohio-6315, at ¶ 6; *Gleason v. Gleason*, 4th Dist. Scioto No. 08AP612, 2008-Ohio-6315, (Mar. 7, 1990), at *1. *See also Wise v. Gurskey,*

66 Ohio St.2d 241, 421 N.E.2d 150, 151 (1981) and *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381, (1989), fn. 4. The fact that the counterclaim was not expressly dismissed also does not prevent us from considering the appeal. Therefore, and in the interests of justice, we proceed to consider Appellant's assignments of error.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN GRANTING THE JOINT COMMINGLED CHECKING/SAVINGS ACCOUNT WAS SOLE PROPERTY OF THE HUSBAND WITH NO INTEREST WITH WIFE THEREIN.

II. THE TRIAL COURT ERRED WHEN IT TOTALLY DISCOUNTED AN EXPERT'S REPORT AS TO THE VALUATION OF THE HOME AS $237,000.00.

III. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE DURATION OF THE MARRIAGE WAS DECEMBER 30, 2016 TO MAY 1, 2017.

IV. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE WIFE SHOULD REPAY HUSBAND THE SUM OF $11,000.00.

V. THE TRIAL COURT, THROUGH THE MAGISTRATE, ERRED IN NOT CONDUCTING A HEARING ON THE CONTEMPTS."

## DURATION OF THE MARRIAGE

{¶18} For ease of analysis, we begin with consideration of Appellant's third assignment of error.

1.  STANDARD OF REVIEW

**{¶19}** "Trial courts possess broad discretion in choosing the appropriate marriage termination date for purposes of property valuation." *Cornelius v. Cornelius,* 4th Dist. Washington No. 12CA19, 2012-Ohio-6293, at ¶ 8, quoting *Soulsby v. Soulsby,* 4th Dist. Meigs No. 07CA1, 2008-Ohio-1019, ¶ 26, citing *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). "Thus, we will not disturb the termination of marriage date absent an abuse of discretion." *Id.,* citing *Berish* at 319. The phrase "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary. *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe* 1, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).

**{¶20}** "The duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and liabilities, and determining appropriate dates for valuation." *Cornelius, supra*, at ¶ 9, quoting *Liming v. Damos,* 4th Dist. Athens No. 08CA34, 2009–Ohio–6490, ¶ 26, citing *Eddy v. Eddy,* 4th Dist. Washington No. 01 CA20, 2002–Ohio–4345, ¶ 23. Under R.C. 3105.171(A)(2), "during the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶21} "Thus, the court may presume the date of the final hearing for divorce is the appropriate termination date of the marriage unless the court determines that the application of such a date would be inequitable." *Cornelius,* at ¶ 10, quoting *Liming* at ¶ 27. Accordingly, "[e]quity may occasionally require valuation as of the date of the de facto termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets." *Berish, supra*, at 320. As the *Berish* Court explained:

"The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. The public policy giving rise to equitable distribution is at least in part an acknowledgment that marriage is a shared enterprise or joint undertaking. While marriage is literally a partnership, it is a partnership in which the contributions and equities of the partners do differ from individual case to individual case. Assets acquired by the joint efforts of the parties should be, on

termination, eligible for distribution. But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review. *Id.* at 319–320.”

**{¶22}** "This court has noted that trial courts generally 'use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities and/or separate bank accounts.' " *Cornelius,* at ¶ 11, quoting *Murphy v. Murphy,* 4th Dist. Lawrence No. 07CA35, 2008–Ohio– 6699, ¶ 38, quoting *Soulsby, supra,* at ¶ 29.  "Courts should be reluctant to use a de facto termination of marriage date solely because one spouse unilaterally vacates the marital home." *Soulsby* at ¶ 29.  However, the " 'trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances.' " *Murphy* at ¶ 38, quoting *Soulsby* at ¶ 29.

## 2.  LEGAL ANALYSIS

**{¶23}** Here, the trial court found the duration of the marriage was from December 30, 2016 to May 1, 2017.  Appellant asserts that the magistrate should have used the final hearing date of November 16, 2017 as the date of the parties' divorce.  Appellant bases her argument on the fact

that the parties still maintained equity in the marital home up to the final

hearing date and improvements to the home were ongoing.

{¶24} The trial court found as follows:

"Pursuant to ORC Section 3105.171(A)(2), the duration of the
marriage is from December 30, 2016 to May 1, 2017. The
Court finds that use of said dates is fair and equitable. The
parties were married for a little over 4 months. There were no
financial entanglements upon the filing of the Complaint. In
fact, Wife had made a withdraw from the savings account with
the specific intent to essentially wipe-out the marriage as if it
did not exist in the first place. Husband denied a credit card
claim and closed-out accounts in order to disentangle the parties
at or about May 1, 2017. The only remaining claim is by Wife
that there is some marital equity in the Deerfield home.
Wherefore, the Court finds May 1, 2017 an equitable de facto
termination date for this marriage."

{¶25} Appellee argues the trial court did not err in its finding,

asserting that from the time Appellant filed her Complaint for Divorce and

removed money from the savings account, the parties separated, lived

separately, and remained separate. Appellee points out that the parties made

no attempts at reconciliation. They also maintained separate residences and

separate accounts from that time on.

{¶26} We agree with the court's de facto finding. In this case, the

parties had only been married four months when the divorce complaint was

filed on May 1, 2017. The evidence clearly shows that under the totality of

the circumstances, the marriage was effectively over as of May 1, 2017. As

such, we find no merit to Appellant's argument.  The trial court did not abuse its discretion in making its de facto finding.  Appellant's third assignment of error is hereby overruled.

## DIVISION OF PROPERTY

**{¶27}** Because Appellant's arguments under assignments of error one and four are interrelated, we consider them jointly.

## 1.  STANDARD OF REVIEW

**{¶28}** Trial courts must divide marital property equitably between the spouses. *King v. King*, 4th Dist. Washington No. 2014-Ohio-5836, at ¶ 14; R.C. 3105.171(B).  Usually, this requires that marital property be divided equally. R.C. 3105.171(C)(1).  "However, if the trial court determines that an equal division would produce an inequitable result, it must divide the property in a way it deems equitable." *O'Rourke v. O'Rourke,* 4th Dist. Scioto No. 08CA3253, 2010–Ohio–1243, ¶ 15; R.C. 3105.171(C)(1).  In contrast, "the court shall disburse a spouse's separate property to that spouse." R.C. 3105.171(D).  Because the trial court possesses great discretion in reaching an equitable distribution, we will not reverse its division of property absent an abuse of discretion. *O'Rourke* at ¶ 15.

## 2. LEGAL ANALYSIS

**{¶29}** Appellant asserts that the trial court committed error by concluding that the parties' joint checking account was Appellee's sole property. The trial court found as follows:

> "The Court finds that Husband has adequately traced the proceeds of the savings account to the proceeds of the sale of his separate property on Barton Street. Wherefore, the down payment of $11,556.11 on the Deerfield residence is Husband's separate property. The remainder of the savings account was Husband's separate property."

**{¶30}** Appellant also asserts the trial court erred when it found the wife should repay husband the sum of $11,000.00. The court made this finding:

> "The Court finds that Wife's withdrawal from the savings account of $11,000.00 was from Husband's separate property. Without proof that the marriage was a nullity or that there was fraud in the consummation of the marriage, Wife had no claim to be "made whole" as if the marriage had not occurred. Wherefore, she had no claim to take the $11,000.00 from the savings account. Wife shall repay the Husband the $11,000.00 for his separate property that she withdrew."

**{¶31}** "[U]nder R.C. 3105.171(B), a court is under a mandatory duty to classify property in a divorce proceeding as either marital or separate before dividing the property." *King, supra,* at ¶ 15, quoting *Girton v. Girton,* 4th Dist. Athens No. 08CA30, 2009–Ohio–4458, ¶ 6. And because " '[a] trial court must take into account marital debt when dividing marital

property,' " it must also classify the parties' debts, as well as assets, before distributing their property. *Machesky v. Machesky,* 4th Dist. Ross No. 10CA3172, 2011–Ohio–862, ¶ 10, quoting *Smith v. Emery–Smith,* 11th Dist. Geauga No.2009–G–2941, 2010–Ohio–5302, ¶ 45.

**{¶32}** Furthermore, the trial court must also value the parties' property before distributing it. *King, supra,* at ¶ 16, citing *Bray v. Bray,* 4th Dist. Ross No. 10CA3167, 2011–Ohio–861, ¶ 28. "Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding." *Id.* "In any order for the division or disbursement of property or a distributive award made pursuant to [R.C. 3105.171], the court shall make written findings of fact that support the determination that the marital property has been equitably divided * * *." R.C. 3105.171(G). "[T]he trial court must make findings 'in sufficient detail to allow for meaningful appellate review of its decision.' " *O'Rourke* at ¶ 16, quoting *Knight v. Knight,* 4th Dist. Washington No. 99CA27, 2000 WL 426167, *4 (Apr. 12, 2000). *See also Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph two of the syllabus.

**{¶33}** In this case, at trial the parties' testimony and the exhibits revealed that prior to marriage, Appellee had a PNC savings account he held jointly with his daughters. When he married Appellant in December 2016,

he put Appellant's name on both his checking and savings accounts as of December 29, 2016. Appellant testified it was Appellee's desire to put her name on the accounts and to commingle funds. Appellant testified Appellee wanted her to have unlimited access to funds.

{¶34} Prior to the marriage, Appellee owned a home on Barton Street in Logan where he lived prior to his marriage to Appellant. Prior to the marriage, Appellant was living in a home she was purchasing under a land contract in Nelsonville. The parties lived in the Nelsonville home for the first few months of the marriage. Appellant testified she paid for the parties household expenses the first few months of marriage when they lived in the Nelsonville home. This depleted Appellant's prior separate checking account.

{¶35} The parties decided to purchase a home on Deerfield Street in Logan. Appellant sold his Barton street property, netting $39, 027.58. Appellant paid the down payment of $11,556.32 to purchase the Deerfield Street property from the savings account. The parties stipulated that the proceeds from the Barton property sale went to the joint checking first; $5,000.00 stayed in checking and the rest of the proceeds, over $34,000.00 was transferred to the joint savings.

{¶36} On April 28, 2017, Appellant withdrew $11,000.00 from the

savings account. Appellant testified she withdrew $11,000.00 because she estimated that was the amount belonging to her as a result of her own paychecks and her son's social security checks which were directly deposited in the savings account. Appellant acknowledged when she figured up the amount she claimed to be her separate property, she did not figure up the amount of Appellee's paychecks and contributions. Appellant agreed it was fair to say that Appellant had payroll deposits as well into the account, although she added that he had been on short-term disability, and the amount of his income would have been reduced.

{¶37} We agree that there is a confusion of the issues with regard to the checking and the savings accounts in both Appellant's brief and in her trial testimony. While Appellant acknowledged the parties had both a joint checking and joint savings account, Appellant indicates that the parties' paychecks, other income, and her son's social security checks were deposited into the savings account instead of checking. Nevertheless, the trial court's ruling pertained solely to the savings account. The documentary evidence Appellee presented at trial included:

1. Exhibits 10 and 11, which vested sole ownership of the Barton Street property in him in 2003;

2. Exhibit 6, the check to Appellee for the proceeds in the amount of $39, 047.58 from the sale of the Barton Street property;

3.  Exhibit 5, the deposit slip evidencing the proceeds from the sale were deposited into the parties' checking account (reflecting an account number of 9827 as the last four digits);

4.  Exhibit 4, the deposit slip evidencing the deposit of $34,047.58, (which came from checking) into the savings account; and,

5.  Exhibit 3, the savings account statement evidencing the $34,047.58 deposit. (This is actually captioned "Premier Money Market Statement" and reflects an account number of 9567 as the last four digits.)

{¶38} Appellant did not provide documentary evidence to contradict these exhibits.  She urges reliance upon her unsupported testimony. However, we will not reverse a trial court's findings of fact if they are supported by some competent, credible evidence. *Patterson v. Patterson v. Patterson,* 4th Dist. Adams No. 95CA654, 1998 WL 880494 (Dec. 14, 1998), at *1; *State ex rel. Pizza v. Strope*, 54 Ohio St.3d 41, 46, 560 N.E.2d 765 (1990); *C.E. Morris v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). ).

{¶39} We find that the trial court's findings are supported by the record and that Appellee, through testimony and documentation, adequately traced the proceeds of the savings account to the proceeds from the sale of his Barton Street property which he owned separately prior to marriage. We

agree that the savings account and the down payment were correctly deemed to be Appellant's separate property.

{¶40} We further agree with the trial court's order that Appellant repay Appellee $11,000.00. Appellant testified prior to withdrawing $11,000.00 from the savings account, the parties had lived in the Deerfield Street home for approximately four weeks. Appellant testified she was looking at the accounts online and had seen some improprieties with the accounts ("pockets of money" being removed). Appellant questioned Appellee and he became upset. Appellant admitted that the money removed may have been for use on projects on the new house. Appellant testified as follows:

> "I texted him and I said well I think we need to get separate accounts for a while, I said until I'm sure what's going on here I said because I don't like some of the behaviors I'm seeing and I just think we need separate accounts. He texted back he said fine you get your own I'll get mine, and I said okay."

Appellant further testified:

> "When I took the money I didn't take the money with the intent of thinking we're going to get divorced and this is going to be it. I thought I was going to take the money and he was going to go to a doctor and be looked at and figure out what was going on."

> * * *

"What I did was and you have to understand this wasn't a clear I mean it wasn't like I premeditated to do this it was a split minute decision based on what was going on."

{¶41} Appellant withdrew the $11,000.00 from the savings account on April 28, 2017, two days prior to her filing for divorce. The parties had been married approximately 4 months. The trial court found this savings account to be Appellee's separate property due to Appellee's ability to adequately document and trace the proceeds from his sale of his Barton Street property, separate property he owned prior to his marriage.

{¶42} The trial court is entitled to make its own determination as to the weight of the evidence and, more importantly, the credibility of witnesses because it is in the best position to observe the witness's gestures and voice inflections. *See State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1968), at paragraph one of the syllabus. The court is free to believe all, part or none of the testimony of any witness appearing before it. *State v. Nichols*, 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (1993); *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (1992); *State v. Harriston*, 63 Ohio App.3d 58, 63, 577 N.E.2d 1144 (1989). Given the court's finding that the proceeds from the sale of the Barton Street property, Appellee's home and

separate property for years prior to the marriage, had been adequately traced, we do not find the trial court's order to be unsupported.  Appellant provided no documentation of a valid claim to the $11,000.00 and the trial court was in the best position to view the evidence and assess witnesses' credibility.

{¶43} We find no merit to Appellant's first and fourth assignments of error.  They are hereby overruled.

VALUATION OF MARITAL HOME

1.  STANDARD OF REVIEW

{¶44} The valuation of property in a divorce case is a question of fact.  Thus, the issue is subject to review under a manifest weight of the evidence standard. *Covert v. Covert*, 4th Dist. Adams No. 03CA778, 2004-Ohio-3534, at ¶ 6. *See Brown v. Brown,* 4th Dist. Pike No. 02CA689, 2003–Ohio–304, at ¶ 13; *Cole v. Cole* 4th Dist. Jackson No. 00CA3 (Dec. 15, 2000); *Rinehart v. Rinehart* 4th Dist. Gallia No. 96CA10 (May 18, 1998).  Consequently, the trial court's judgment will not be reversed as long as it is supported by some competent, credible evidence. *See Shemo v. Mayfield Hts.,* 88 Ohio St.3d 7, 10, 2000–Ohio–258, 722 N.E.2d 1018, 1022; *Vogel v. Wells*, 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159 (1991); *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), at the syllabus.  This standard of review is highly deferential and even "some" evidence is

sufficient to sustain the judgment and to prevent a reversal. *See Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992 (1997); *Willman v. Cole,* 4th Dist. Adams No. 01CA725, 2002–Ohio–3596, at ¶ 24; *Simms v. Heskett,* 4th Dist. Athens No. 00CA20, (Sept. 18, 2000).

## 2. LEGAL ANALYSIS

{¶45} The magistrate found the value of the marital home to be $215,000.00. Appellant asserts that the trial court erred by completely ignoring an expert's report as to the valuation of the home in the amount of $237,000.00. Appellant presented the testimony of Bill Wyskiver, a licensed appraiser. Appellant concludes that the magistrate should have considered the $22,000.00 increase in value and split the amount equitably between the parties.

{¶46} Appellee responds that the magistrate did not totally disregard the certified appraiser's opinion. Appellee points out the magistrate established a de facto termination of marriage date of May 1, 2017. The property was sold in an arms-length transaction only six weeks prior, for $215,000.00. Appellee emphasizes that the sale price is the best evidence of the value.

{¶47} In *Jones v. Jones,* 4th Dist. Athens No. 14CA33, 2015-Ohio-3650, we observed at ¶ 29:

"The Ohio Supreme Court has stated the following concerning the sale price being the best evidence of the value of a piece of property:  Indeed, as this court has often observed, '[a]ppraisals based upon factors other than sales price are appropriate for use in determining value only when no arm's-length sale has taken place, or where it is shown that the sales price is not reflective of the true value.' * * * *Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.*, 9 Ohio St.3d [218,] 219, 459 N.E.2d 894 (1984). *See, also, N. Olmsted Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 54 Ohio St.3d 98, 561 N.E.2d 915 (1990), in which we held that '[i]n the absence of evidence of a recent arm's-length sale between a willing buyer under no compulsion to buy and a willing seller under no compulsion to sell, the testimony of expert witnesses becomes necessary'; and *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision,* 80 Ohio St.3d 455, 459, 687 N.E.2d 426 (1997), in which we held that 'when an actual sale is not available, "when an appraisal becomes necessary," quoting *Park Invest. Co. [v. Bd. of Tax Appeals]* 175 Ohio St. [410] 412, 195 N.E.2d 908.' "

**{¶48}** When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. *Covert, supra*, at ¶ 29; *Clymer v. Clymer*, 10th Dist. Franklin No. 99AP–924 (Sept. 21, 2000); *Kell v. Kell,* 4th Dist. Ross No. 92CA1931, 1993 WL 525003 (Dec. 14 1993).  However, the court may not simply adopt an intermediate figure without a supporting rationale when the parties present substantially different valuations of an asset. *See Patterson, supra,* at *2.

**{¶49}** Mr. Wyskiver testified that, as of October 21, 2017, he valued the home at $237,000.00.  The home was purchased on March 14, 2017 for the amount of $215,000.00.  Mr. Wyskiver testified that there were

significant improvements such as a new HVAC system and floor coverings

which increased the value of the home.  Given that Appellee did not present

contradictory testimony, Appellant concludes that the trial court abused its

discretion by totally ignoring the appraiser's opinion as to the value.

{¶50} Appellee has directed us to the following findings of fact.  In

Finding of Fact 8, the court found in pertinent part:

> "The marital residence was purchased on March 14, 2017 for
> $215,000.00.  The appraisal on the residence was $225,000.00,
> per wife. * * * Exhibit 8 indicates the withdrawal from the
> savings account of $11,556.32.  A note was taken for $204,250.
> With the borrower only being Clifford Smith, husband."

{¶51} In Finding of Fact 13, the court further found:

> "Wife submits there were some improvements to the Deerfield
> residence. * * * Wife's current appraisal, performed by Bill
> Wyskiver, however, would not comment on the prior appraisal,
> (which he performed), or indicate an assessment of value
> added, if any, by improvements like flooring."

{¶52} In the trial court's Conclusions of Law- Property/Debt

Allocation, the court found:

> "The Court does not believe the Deerfield property increased in
> value as of May 1, 2017.  The appraiser indicated he was not
> making a retroactive evaluation.  The best evidence of the value
> is the actual price paid just a matter of 6 weeks prior of
> $215,000.00.  Wherefore, there is no equity to divide between
> the parties."

{¶53} We agree with the trial court's finding.  We hold that some

competent credible evidence supports the trial court's finding that the recent arms-length sale price is the best evidence of the value in this case, especially since the appraiser was unable to testify as to the value of any improvement. The trial court was not required to utilize a particular valuation method. The court also provided a brief supporting rationale for its decision.

**{¶54}** Under these circumstances, we find no merit to Appellant' argument. Accordingly, the second assignment of error is hereby overruled.

FAILURE TO ADDRESS CONTEMPT

1. STANDARD OF REVIEW

**{¶55}** Generally, a trial court possesses broad discretion when considering a contempt motion. *Burchett v. Burchett,* 4th Dist. Scioto No. 16CA3784, 2017-Ohio-8124, at ¶ 19; *State ex rel. Cincinnati Enquirer v. Hunter,* 138 Ohio St.3d 51, 2013–Ohio–5614, 3 N.E.3d 179, ¶ 29, citing *Denovchek v. Trumbull Cty. Bd. of Commrs.,* 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988) ("the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, [and therefore] great reliance should be placed upon the discretion of the [court]"). Thus, ordinarily, absent an abuse of discretion, an appellate court will uphold a trial court's contempt decision. *E.g., id.; Welch v. Muir,* 4th

Dist. No. 08CA32, 2009–Ohio–3575, ¶ 10. " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland,* 140 Ohio St.3d 73, 15 N.E.3d 818, 2014–Ohio–1966, ¶ 67, quoting *State v. Brady,* 119 Ohio St.3d 375, 2008–Ohio–4493, 894 N.E.2d 671, ¶ 23.

## 2. LEGAL ANALYSIS

**{¶56}** In this case, Appellant filed a motion for contempt on July 12, 2017. She alleged that pursuant to the temporary protection order, Appellee was ordered to keep the parties' insurance on the car. However, she further alleges her teenage son was removed from the car insurance policy on May 10, 2017, ten days after the filing of the divorce.[3]

**{¶57}** Contempt has been defined as the disregard for judicial authority. *Hambuechen v. 221 Market North,* Inc., 5th Dist. Stark No. 2016CA-00216, 2017-Ohio-8998, at ¶ 17; *State v. Flinn*, 7 Ohio App.3d 294, 455 N.E.2d 691 (9th Dist.1982). "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham*

---

[3] Appellant made additional allegations in the contempt motion. She also emphasized that the date her son was removed from the insurance coincided with the same day as he had testified in court at the CPO hearing against Appellee.

*Bank v. Tomaszczyk,* 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.

{¶58} Contempt may be classified as direct or indirect. *Hambuechen, supra,* at ¶ 18; *In re: Purola*, 73 Ohio App.3d 306, 310, 596 N.E.2d 1140 (3rd Dist.1991). Direct contempt occurs in the presence of the court, while indirect contempt occurs outside its immediate presence. *Id.* "An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice." *Hambuechen, supra,* at ¶ 18; *In re Lands,* 146 Ohio St. 589, 595, 67 N.E. 433 (1946). In addition, "[c]ontempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." *Purola* at 311. "Civil contempt is designed to benefit the complainant and is remedial in nature. * * *. *State v. Miller*, 5th Dist. Holmes No. 02 CA 16, 2003–Ohio–948, ¶ 28, citing *Purola, supra.* Due process must be observed in both civil and criminal contempt proceedings. *See, e.g., In re Oliver,* 333 U.S. 257, 274–275, 68 S.Ct. 499 (1948).

{¶59} The record reflects that the final divorce hearing commenced with no mention of the contempt motion. During the hearing, Appellant's counsel elicited testimony on the insurance and contempt issue by stating at page 58 of the trial transcript "Okay we have a pending contempt in this

matter." Appellant briefly testified that Appellee had canceled her son's insurance and attempted to provide hearsay evidence in support. However, the magistrate sustained all objections to the hearsay evidence. Later in his testimony, Appellee specifically denied cancelling the insurance. Appellant rested the case without requesting a specific ruling on the contempt issue.

{¶60} Appellant's assigns as error the fact that the magistrate failed to rule on the pending contempt motion. A motion that is not expressly ruled upon when a case is concluded is presumed overruled. *State ex rel. Mender v. Chauncey,* 4th Dist. Athens No. 14CA27, 2015-Ohio-3559, at ¶ 27, citing *Kastelnik v. Helper,* 96 Ohio St.3d 1, 3, 2002–Ohio–2985, 770 N.E.2d 58; *see also Physiatrists Associates of Youngstown, Inc. v. Saffold,* 11th Dist. Trumbull No.2003–T–0038, 2004–Ohio–2793, at ¶ 18. Thus, we may presume the magistrate overruled Appellant's motion for contempt.

{¶61} Here, Appellee responds that although Appellant filed the motion for contempt on July 12, 2017, she did not cause proper service to be made. No attempt was made to serve Appellee directly. Appellee points out that the hearing notice issued August 2, 2017 for the final hearing made no mention of the motion for contempt. The civil rules regarding notice apply when the contempt is civil in nature. *Hambuechen, supra,* at ¶ 19; *Bierce v. Howell,* 5th Dist. Delaware No. 06 CAF 05 0032, 2007–Ohio–3050.

Appellee concludes the trial court made no error by declining to address the motion for contempt that was not properly before the court due to insufficient service.

{¶62} In the May 21, 2018 judgment entry which addressed Appellant's objections, the trial court found:

> "The fifth objection alleged failure to rule on Ms. Smith's motion for contempt. It is clear that the motion was not ruled upon. However, Mr. Smith argued that in order for the Magistrate to hear the contempt, it was necessary that the motion for contempt be served on the party, not just sent to his attorney. This was not done. Therefore, this objection is overruled."

{¶63} Civil Rule 75, divorce actions, provides that the continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ. R. 4 to 4.6. See Civ.R. 75(J). In this appeal, our review indicates that Appellee made no objection to issue of the contempt motion itself, based on a lack of personal service. Lack of proper service under Civ.R. 75(J) can, however, be waived. Where a party appears in court, fails to object to improper service pursuant to Civ.R. 75(J) and defends on the merits of the case, that party will be deemed to have waived the issue of improper service. *Sweeney v. Sweeney*, 2016-Ohio-1384, 63

N.E. 3d 542, at ¶ 25. *See, e.g., Bedi–Hetlin* at ¶ 26; *Huston v. Huston,* 5th

Dist. Coshocton No. 2013CA0030, 2014-Ohio-5654, at ¶ 37.

{¶64} In this case, at the final divorce hearing, Appellee did not object

when Appellant announced that the contempt was pending and the testimony

elicited pertained to the contempt. Appellee cross-examined Appellant on

the issue. Appellee even raised objections to the introduction of hearsay

evidence supporting Appellant's testimony without raising objection to the

topic of the contempt itself. And Appellee answered questions regarding the

contempt issue without objecting as to the lack of service and any assumed

lack of ability to prepare for his testimony due to lack of service. Given that

Appellee failed to object to proper service and actually defended on the

contempt issue, we deemed him to have waived the issue of personal

service.

{¶65} Further, based on our review of the record, we find no error or

abuse of discretion in the magistrate's implicit overruling of the contempt

motion. The trial court was in the best position to view the witnesses and

assess credibility. Appellant testified that Appellee removed her son from

the car insurance in violation of the temporary orders in place. Appellee

denied doing so. The abuse-of-discretion standard is deferential and does

not permit an appellate court to simply substitute its judgment for that of the trial court. *Burchett, supra,* at ¶ 19; *Darmond* at ¶ 34.

{¶66} For the foregoing reasons, we find no merit to Appellant's final assignment of error.  As such, the fifth assignment of error is hereby overruled.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY:  _____
     Matthew W. McFarland, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**